**In re Jack B. SCHIFF, Respondent.**

**No. 59011.**

Supreme Court of Missouri,
En Banc.

Nov. 8, 1976.

Norman A. Selner, Clayton, for informants.

Daniel J. McAuliffe, Clayton, for respondent.

SEILER, Chief Justice.

This is a disciplinary proceeding instituted by the Circuit Bar Committee of the 21st Judicial Circuit against a St. Louis County lawyer. After a formal hearing by the bar committee and the finding of probable cause, an information was filed in this court to which respondent filed an answer. A hearing was held before special master, Honorable Richard C. Jensen, a former circuit judge of the 16th judicial circuit, now retired. The special master, upon findings of fact and conclusions of law, recommended suspension of respondent Jack B. Schiff from the practice of law for two years. Mr. Schiff is 68 years of age and has practiced for approximately 38 years. His practice is largely in the magistrate courts. He files approximately 100 suits per week.

The matter is before us on respondent's exceptions to the findings of the special master, together with the evidence taken before the circuit bar committee and the special master. The case involves the charge that respondent is guilty of certain sharp practices in his dealings with fellow lawyers and certain individual defendants. Respondent appeared before the special master and testified, in effect, that in some instances he could not recall the facts, in other instances the facts were not as other witnesses presented them, and that the agreements upon which some of the violations were based did not in fact exist. Moreover, he maintained that any hardship worked upon the clients of opposing counsel was due to counsel's own negligence.

The findings and conclusions of the special master are these:

1. In the case of *Ivan L. Mullenix v. Karen Fischer*, Ellsworth Cundiff, Jr., entered his appearance as attorney for the defendant. Respondent was sent a memorandum of Mr. Cundiff's appearance, and the two men discussed possible defenses in the case. Subsequently, Mr. Cundiff re-

quested a jury trial and both attorneys were notified that the case would be set on the docket for the week of June 5, 1972, with the docket call to be held June 2. A week prior to June 2, respondent told Mr. Cundiff that he (Schiff) would appear at the docket call and inform Mr. Cundiff of the date and time of trial, and therefore, Mr. Cundiff would not have to appear. Consequently, Mr. Cundiff did not appear. Respondent obtained a setting for June 8, but did not inform Mr. Cundiff of the date, contrary to their agreement. When Mr. Cundiff did not appear on June 8 for trial, respondent took a default judgment against Mr. Cundiff's client and did not notify Mr. Cundiff that a default judgment had been taken.

The special master concluded that by failing to notify defendant's attorney either prior to or subsequent to the taking of the default, respondent violated Rule 4 and DR 7–106(C)(5) by failing ". . . to comply with known local customs of courtesy or practice of the bar . . .." In this case, the local custom, as found by the special master, required notice to opposing counsel that a default would be taken and/or notice after the default judgment that a default had been taken.

The special master found further that respondent's failure to honor his agreement to notify opposing counsel in advance of the date and time of the court setting in this contested case amounted to deceit in violation of DR 1–102(A)(4) which provides that a lawyer shall not ". . . engage in conduct involving dishonesty, fraud, deceit, or misrepresentation." Also, the special master concluded that respondent's failure to give notice of the default after the fact demonstrated a malicious intent to prevent a disputed case from being heard on the merits in violation of DR 7–102(A)(1) which prohibits actions taken to ". . . harass or maliciously injure another." The special master found, moreover, that these events perverted the adversary system, prevented the court from performing its proper function, and weakened public confidence in the administration of justice in violation of DR 1–102(A)(5).

2. In the case of *Ivan Mullenix v. John D. Downes and Carol Lynn Downes*, Harry Ritchey entered his appearance as attorney for the defendants on June 10, 1971. On that same date, a memorandum of Mr. Ritchey's appearance was placed in the court file. Subsequently, respondent and Mr. Ritchey discussed possible defenses. Mr. Ritchey requested that the case be continued at the next setting on June 24, 1971, because he would be unable to attend court. Respondent led Mr. Ritchey to believe that the case would be continued on June 24, but respondent appeared and took a default judgment against Mr. Ritchey's clients. Respondent did not inform Mr. Ritchey that a default had been taken. The special master found respondent's behavior violated the above mentioned disciplinary rules.

3. In the case of *Ira E. Berry, Inc. v. Fred P. and Shirley J. Snyder*, E. A. O'Rourke entered his appearance as attorney for the defendant Shirley Snyder and obtained a change of venue to St. Charles, Missouri. The court gave all attorneys notice that the case was set on the docket of March 30, 1973. Respondent by letter dated March 29 gave notice to Mr. O'Rourke that the case had been continued until April 4. Mr. O'Rourke then requested a jury trial and the case was set for trial on April 24. Respondent appeared at the setting of April 4 and when he learned of the request for a jury trial, he prevailed upon the judge to enter a default judgment. Even though he had further correspondence with Mr. O'Rourke, respondent did not notify Mr. O'Rourke of the default. Again, the special master found this conduct to be in violation of the above named disciplinary rules.

4. In the case of *Woodson Holding Company, Inc. v. Ken Strelow*, the defendant was served with pleadings stating that rent was due for August and September 1973. Mr. Strelow met with respondent on the morning of the setting of the case to discuss complaints Mr. Strelow had about the premises. Furthermore, Mr. Strelow informed respondent that the August rent

had been paid by check. Mr. Strelow also gave respondent a check for the September rent which respondent forwarded to his client. Respondent then had the case continued for one week until October 4, 1973. Respondent told Mr. Strelow that in the meantime he would determine if the August rent had been paid and if it had, the case would be dismissed. In fact, Mr. Strelow had paid his August rent by a check dated August 10 which was cleared by his bank on September 12. On October 4, knowing Mr. Strelow maintained that his rent payments were not due until the fifteenth of each month and that the plaintiff had demanded the rent payments by the tenth of each month, respondent took a default judgment against Mr. Strelow for October's rent plus attorney's fees and did not notify Mr. Strelow of the default judgment.

The special master found that by this conduct respondent knowingly allowed Mr. Strelow, a layman, to rely upon his misrepresentations as to settlement and kept his client's cause of action alive until he was able to increase the amount claimed and procure a judgment for additional money without notice to Mr. Strelow of any intention to do so. Therefore, concluded the master, respondent engaged in deceit and misrepresentation prejudicial to the administration of justice reflecting on his fitness to practice law in violation of DR 1–102(A) generally and DR 1–102(A)(4), (5), and (6) and gave advice to a person not represented by a lawyer where the interests of such person might conflict with the interests of his client in violation of DR 7–104(A)(2).

5. Subsequent to the above mentioned default judgment in *Woodson Holding Company, Inc. v. Ken Strelow*, respondent requested an execution and garnishment directed to the First National Bank of St. Peters, Missouri, as garnishee in that case. The bank made its return by forwarding to respondent its cashier's check number 18002 payable to the magistrate court. In the meantime, Mr. Strelow obtained the services of an attorney, Michael Turken, who filed motions to set aside judgment and to quash the execution and garnishment. A copy of the motions and notice of a hearing on them were mailed to respondent. On December 6, 1973, Mr. Turken filed an amended motion to quash and on that same date he, respondent, and Judge O'Neil discussed the pending motions which were continued for argument until December 20. It was also agreed and made a court order that no disposition would be made of the proceeds of the garnishment pending the outcome of the motions. Later the motions were continued again until January 17, 1974. On January 17, 1974, Mr. Turken presented to the court a copy of the First National Bank of St. Peters cashier's check number 18002 which bore the stamped endorsements "Magistrate Court First District" and of Woodson Holding Company. The check was paid by the First National Bank of St. Peters on January 3, 1974. The court stamp on the check was one used to stamp the court's library books. Neither the judge nor court personnel gave respondent permission to place the stamped endorsement on the check pending the outcome of the motions, and regardless of who placed the endorsement on the check, it was done at a time when respondent knew of the pendency of the motions.

Additionally, by a letter dated December 12, 1973, respondent wrote the First National Bank of St. Peters acknowledging receipt of its cashier's check number 18002 and requesting an additional $19.95 to cover the costs of suit and garnishment. By its letter dated January 1, 1974, the bank forwarded to respondent its cashier's check number 18387 payable to the magistrate court. This check, too, was endorsed with the court's book stamp and further endorsed by respondent. Again, neither the judge nor court personnel authorized respondent to place or to have placed the court's endorsement on the check.

The special master found that on both these occasions, respondent without consent or permission used a court stamp to endorse checks payable to the court and deposited them in favor of his client. In the first instance, the special master found respon-

dent in violation of an express agreement that the funds should be held by the court pending the outcome of motions challenging the collection procedure. Respondent knew that his right to collect these funds was being challenged, but he proceeded to turn the funds over to his client in a manner to avoid the knowledge of the court and opposing counsel, and according to the special master thereby usurped the identity of the court and engaged in improper conduct against both the court and his adversary in violation of DR 1–102(A)(4), prejudiced the administration of justice in violation of DR 1–102(A)(5) by using the offices of the court as an instrument of unfair gain for his client, and ignored a ruling of the court with disdain for its authority and dignity in violation of DR 7–106(A).

6. In the case of *The Village Green Apartments v. Robert A. Bilzing*, Mark S. Seigel as attorney for the defendant filed an answer and counterclaim. Respondent then obtained a change of venue. Notice of the setting of the case was mailed to both attorneys, but Mr. Seigel did not receive his copy. On December 4, 1973, respondent took a default judgment and dismissed the defendant's counterclaim for failure to prosecute. Respondent did not inform the judge of either Mr. Seigel's entry in the case or his counterclaim. The judge did not read respondent's default memorandum prior to approving it, and respondent made no attempt to notify Mr. Seigel that he was going to take a default and dismiss the counterclaim. Respondent did not notify Mr. Seigel that a default had been taken or that the counterclaim had been dismissed.

The special master concluded that respondent violated DR 1–102(A)(4), (5), and (6) by failing to apprise the court of the nature of the business he was presenting and DR 7–106(C)(5) by failing to notify Mr. Seigel of the default and dismissal.

7. In the case of *Whispering Hills Development Co. v. Sanford J. Bassin*, a summons issued and was returned non-est. Respondent then requested an alias summons and an attachment. The writ of attachment was executed October 1, 1971, by seiz-ing property of the defendant. The writ was returnable October 21. On October 21, respondent had the matter continued until October 28 when he presented to the clerk for her signature an affidavit in attachment dated October 1.

The special master found that respondent created evidence he knew was false in violation of DR 7–102(A)(6) when he added to the court file an affidavit dated back one month to the issuance of the order of attachment in order to preserve the magistrate court's jurisdiction and that either the affidavit was false or it was not timely filed.

In disciplinary proceedings we have held many times that the findings and conclusions of a commissioner or special master are advisory, not binding; that it is our duty to review the evidence. "The credibility, weight, and value of the witnesses and the determination of all fact issues necessary to a decision in the case are for this court . . . ." *In re Gamblin*, 458 S.W.2d 321, 323 (Mo.banc 1970). This continues to be the basis on which we hear and determine disciplinary proceedings.

In the case before us, the evidence is largely oral testimony. If the facts are as testified to by the witnesses for the informants, respondent should be disciplined. If the facts are as testified to by respondent, he should not be disciplined. The special master found the former, but we agree that we should not leave the credibility of the witnesses to his sole discretion, although his neutrality is unquestioned and his findings are persuasive and amply supported by the evidence.

In making our own review of the record we find it significant that not one but three reputable practicing lawyers testified that respondent had obtained a default judgment by violating the understandings reached as to a pending case; that respondent was too quick to take a default judgment against the layman, Mr. Strelow, for the October 1973 rent under the circumstances; that it is highly unlikely that the court clerks in the garnishment case would

have used the court's library book stamp to endorse the cashier's checks which respondent cashed; that respondent failed to apprise the court of the full significance of the default memorandum in the case where defendant's counterclaim was shown dismissed for failure to prosecute and judgment by default was taken by plaintiff on its claim; that in the attachment case, respondent's explanation that the attachment affidavit was absent from the court file because he had taken it to the sheriff's office for service is not convincing, as there is no reason why the sheriff's office would need the attachment affidavit and the normal situation would be for the attachment affidavit to be filed with the magistrate clerk before the writ of attachment was issued and to remain in the magistrate court file.

We, therefore, adopt as our own the findings of the special master and we are in accord with his conclusions with two exceptions.

We cannot agree with the special master's conclusion that respondent violated DR 7–106(C)(5) by failing ". . . to comply with known local customs of courtesy or practice of the bar . . . ." Several attorneys practicing in the relevant judicial circuit testified to the practice of notifying opposing counsel either of an impending default judgment or after a default had been taken. The most that can be said for this testimony is that it is equivocal. The informant has failed to establish a local custom regarding the taking of default judgments. Due to this failure of proof, the special master's conclusion regarding respondent's violation of DR 7–106(C)(5) is not warranted.

Likewise, based upon the evidence, we cannot agree that respondent violated DR 7–104(A)(2) by giving advice to a person not represented by a lawyer where the interests of such person might conflict with the interests of his client. Although respondent told Mr. Strelow that the case would be dismissed if it was determined that the rent had been paid, the conclusion that respondent violated DR 7–104(A)(2) is not warranted.

Notwithstanding our disagreement with the special master's findings and conclusions in these two respects, we believe disciplinary action is required, but we believe the recommended suspension of two years is too harsh unless respondent fails to discontinue the sharp practices for which he has now been brought to task. Respondent Jack B. Schiff is hereby publicly reprimanded by the publication of this opinion, ordered to pay the costs of this proceeding, and placed on probation for two years from the date of this opinion under the following conditions:

1. He shall at all times conduct himself in an ethical and professional manner.

2. He shall report in writing once a month for a period of two years, commencing the first day of November, 1976, to the 21st judicial circuit bar committee certifying (a) in his first report that he has read and understands the code of professional responsibility including the canons of ethics, the ethical considerations, and disciplinary rules, and (b) in his subsequent reports that he has complied with the code of professional responsibility during the period of practice covered by each report.

We reserve jurisdiction to reconsider suspension or disbarment upon either our own motion or that of the circuit bar committee during the period of respondent's probation.

MORGAN, BARDGETT and DONNELLY, JJ., concur.

HOLMAN, J., dissents in separate dissenting opinion filed.

HENLEY, J., dissents and concurs in separate dissenting opinion of HOLMAN, J.

FINCH, J., dissents.

HOLMAN, Judge (dissenting).

I respectfully dissent. While I doubt the advisability of inaugurating the use of probation into our bar disciplinary proceedings I do not base my dissent on that ground. I dissent because I believe that the conduct of respondent as disclosed by the majority

opinion is sufficient to require that he be disciplined at least to the extent recommended by the special master. I would accordingly order respondent suspended indefinitely from the practice of law with leave to apply for reinstatement after the expiration of two years from the date of this decision.