(No. 58302.—

*In re* DONALD MARTIN WITTE, an Attorney, Respondent.

*Opinion filed December 1, 1983.—Rehearing denied January 27, 1984.*

302

James J. Grogan, of Chicago, for the Administrator of the Attorney Registration and Disciplinary Commission.

William J. Harte, Ltd., of Chicago (William J. Harte, of counsel), for respondent.

CHIEF JUSTICE RYAN delivered the opinion of the court:

The Administrator of the Attorney Registration and Disciplinary Commission initiated this reciprocal disciplinary action against respondent, Donald Martin Witte, following a Supreme Court of Missouri order that respondent be disbarred for what it referred to as commingling a client's funds with his own. (See *In re Witte* (Mo. 1981), 615 S.W.2d 421, 428 (*en banc*).) The Bar Committee of St. Louis instituted the Missouri proceedings against respondent when it found probable cause to believe him guilty of professional misconduct. A special master was appointed to hear evidence and make findings of fact, conclusions of law, and recommendations. The master found respondent guilty of professional misconduct and recommended a public reprimand. The Supreme Court of Missouri, reviewing the case *de novo*,

found respondent guilty of commingling and ordered him disbarred.

After the Supreme Court of Missouri denied his petition for rehearing, respondent appealed to the United States Supreme Court, but the appeal was dismissed for want of jurisdiction. The Supreme Court, however, considered the pleadings as a petition for a writ of *certiorari* and denied *certiorari*. (*Witte v. Bar Committee* (1981), 454 U.S. 1025, 70 L. Ed. 2d 469, 102 S. Ct. 559.) Respondent then petitioned the Supreme Court of Missouri to reconsider its order. The Missouri court denied this petition on February 16, 1982, "without prejudice to [respondent's] filing for reinstatement on or after one year from date of this order." (Mo. S. Ct. Order, Feb. 16, 1983, No. 61379.) At this point, respondent was ordered to surrender his Missouri license.

Upon learning of the Missouri disbarment, the Administrator petitioned this court pursuant to Rule 763 (87 Ill. 2d R. 763) for an order that respondent's license to practice law in Illinois be suspended for the same period of time and upon the same conditions ordered by the Supreme Court of Missouri. At respondent's request, the Administrator filed a motion with the Hearing Board to schedule a hearing on the matter. This court subsequently denied the Administrator's petition for suspension and remanded the cause to the Hearing Board.

Concluding that respondent should be subject to the same discipline in Illinois as ordered by the Supreme Court of Missouri, the Hearing Board recommended in August 1982 that he be disbarred, but that he be allowed to petition for reinstatement under Rule 767 (87 Ill. 2d R. 767) on or after February 16, 1983. Respondent filed exceptions to the Hearing Board report.

The Review Board, after permitting briefs and oral argument, rejected disbarment as a proper sanction, but

unanimously agreed that suspension is warranted. The Review Board members were unable to agree upon the length of the recommended suspension or the precise procedure that should be followed for reinstatement. The minority concluded, however, that respondent should not be required to petition for reinstatement under Rule 767. From these Review Board recommendations, respondent has filed exceptions.

Before proceeding to respondent's contentions before this court, we note the most recent development regarding his license to practice law in Missouri. In February 1983 respondent became eligible to petition the Supreme Court of Missouri for reinstatement. He applied to the court for reinstatement, but in September 1983, the application was denied. Mo. S. Ct. Order, Sept. 20, 1983, No. 64834.

The issues that an attorney respondent may address before the Hearing Board in a reciprocal disciplinary action are defined by Rule 763 (87 Ill. 2d R. 763). In this case, respondent raised two of the five issues on which the rule allows him to be heard. The first is whether the procedure in Missouri was so lacking in notice and opportunity to be heard as to have deprived respondent of due process of law. The second issue is whether respondent's conduct warrants substantially less discipline in Illinois than was imposed in Missouri. We will consider these questions after summarizing respondent's conduct that precipitated the Missouri disciplinary proceedings as stated in *In re Witte* (Mo. 1981), 615 S.W.2d 421 (*en banc*).

Respondent was employed by Mrs. Doris Duckett to pursue two claims that arose when an accident involving a bus resulted in her husband's death. Mrs. Duckett retained respondent on a contingent-fee basis to recover against the transportation authority for wrongful death

and to recover $1,000 allegedly due from an insurer under a double-indemnity clause.

Respondent settled each case for $750 and deposited the proceeds into office or personal bank accounts that contained his own funds. He subsequently withdrew all funds in these accounts for his personal use. In addition, after deducting expenses, respondent reported these settlement funds as his own income for tax purposes. No settlement proceeds were delivered to Mrs. Duckett until another attorney contacted respondent in her behalf. Prompted by this inquiry, he paid the client a portion of the proceeds.

These facts were regarded as undisputed by the Supreme Court of Missouri and our Hearing Board. Based on the testimony describing this conduct, the Missouri court found that "[t]he commingling of the client's funds is admitted." (615 S.W.2d 421, 423.) The court found no mitigating circumstances that justified respondent's conduct. After looking to prior Missouri commingling cases for an appropriate sanction, a majority of the Missouri court concluded that respondent should be disbarred.

In addition to the undisputed details of the basic transaction, the Supreme Court of Missouri considered evidence taken before the special master bearing on issues that might explain or justify respondent's conduct. The foremost of these issues is whether the client agreed to either settlement.

Mrs. Duckett testified that she did not agree to settle either case and, further, that she did not see or sign settlement papers or drafts. Respondent, on the other hand, recalled that Mrs. Duckett knew of and agreed to both settlements. He stated that, to the best of his recollection, she had seen and signed all documents in a manner consistent with his office routine. With respect to the nondelivery of settlement proceeds, respondent testi-

fied that, in each case, Mrs. Duckett had requested that he retain the sums for her rather than pay them out immediately.

During hearings before the Missouri special master, respondent also discussed the extent to which he had commingled funds. In his view, he owed his client a net amount of only $118.60. He derived this figure by subtracting from the settlement proceeds his fees for the two settlements, the court costs, and fees for unrelated legal services that he claimed to have performed for Mrs. Duckett. Respondent stated that after the other attorney contacted him about Mrs. Duckett's situation, he decided to waive the fees for the collateral legal services. Hence, his ultimate payment to her exceeded the $118.60 that he thought he actually owed. Although respondent frequently referred to his office records while testifying before the master, he did not produce time records or other documentation of the services he claimed to have rendered with respect to legal matters other than the two settlements.

The Supreme Court of Missouri also considered that Mrs. Duckett was a difficult client with whom to transact business. The special master found that "[s]he was unpredictable, uncooperative, [and] evasive." (615 S.W.2d 421, 422.) The evidence showed that she experienced much emotional and physical stress during the time that she dealt with respondent.

The Supreme Court of Missouri did not find that any of these additional circumstances qualified as mitigating factors that would justify imposing a lesser sanction upon respondent. The court rejected the theory that the client's physical or mental problems in any way excused respondent's conduct: "For every degree that respondent by his testimony and evidence proved a less than normal mental and functional capacity on the part of his

client, Doris Duckett, he raised by an equivalent degree the standard of conduct which this Court must require of him \*\*\*." 615 S.W.2d 421, 422.

As noted earlier, respondent has raised two of the issues that Rule 763 (87 Ill. 2d R. 763) allows him to address in this reciprocal disciplinary action. His first contention is that the Missouri procedure deprived him of due process of law. With respect to this claim, respondent has not disputed our Hearing Board's conclusions that, in Missouri, he was represented in all proceedings by able counsel; that he was allowed to and did testify himself; and that he availed himself of the opportunity to cross-examine witnesses. Instead, respondent's argument centers on the Supreme Court of Missouri reviewing the case *de novo*, in which review the special master's recommendation, public reprimand, was rejected in favor of a harsher sanction. Respondent complains that from a written record the court drew conclusions contrary to those of the master who had personally observed the witnesses. In respondent's view, this procedure deprived him of the fair hearing that due process requires.

We find this argument to be without merit. Attorney discipline cases reach the Supreme Court of Missouri in the nature of an original proceeding. (See *In re Gamblin* (Mo. 1970), 458 S.W.2d 321, 322 (*en banc*).) Just as the hearing and review boards serve as agents for this court in the fact-finding process (*In re Mitan* (1979), 75 Ill. 2d 118, 123-24), the special master in Missouri makes findings and recommendations that the supreme court of that State regards as persuasive, but not binding. As the Missouri court explained in *In re Connaghan* (Mo. 1981), 613 S.W.2d 626, 628 (*en banc*), "the findings and conclusions of a special master are advisory for the court but in the final analysis it is our duty to determine the credibility of witnesses, to review the evidence, and to make

our own determination of the facts. [Citations]." While the Supreme Court of Missouri has acknowledged the special master's superior opportunity to judge the witnesses' credibility (*e.g.*, *In re Gamblin* (Mo. 1970), 458 S.W.2d 321, 323 (*en banc*)), it consistently has conducted a thorough review of each record before reaching its independent decision concerning appropriate discipline. Accordingly, that court on occasion has adopted all findings and conclusions of the master (*In re Pine* (Mo. 1979), 576 S.W.2d 538, 541 (*en banc*)), while in other cases it has drawn conclusions and imposed sanctions quite different from those the master advocated. *In re Schiff* (Mo. 1976), 542 S.W.2d 771, 775 (*en banc*) (imposing a lesser sanction than recommended); *In re Wines* (Mo. 1963), 370 S.W.2d 328, 336 (*en banc*) (imposing a harsher sanction than recommended).

We find that the Missouri court's treatment of the master's report did not violate respondent's due process rights. Indeed, the Missouri fact-finding process in respondent's case was not unlike the one that our Illinois disciplinary system provides. Respondent, at all times represented by counsel, was allowed to appear, testify and cross-examine witnesses before the master. He then availed himself of the established system of review. Thus afforded an adequate opportunity to be heard, respondent received the benefits that procedural due process requires.

Respondent next asserts that his conduct warrants substantially less discipline in this State than was imposed by the Supreme Court of Missouri. He maintains that, in view of sanctions imposed on Illinois attorneys for similar conduct, the maximum penalty in his case should be censure. In the alternative, he contends that, if suspended, his reinstatement should not be contingent on reinstatement in Missouri, nor should he be required

to petition this court for reinstatement pursuant to Rule 767 (87 Ill. 2d R. 767).

Because of differences in the States' disciplinary rules, exact reciprocal discipline cannot always be imposed in reciprocal proceedings. Our Rule 771 (87 Ill. 2d R. 771), which sets out the various sanctions that an Illinois attorney may receive, does not provide for the precise penalty imposed on respondent by the Missouri court. In this respect, the Administrator agrees that the Missouri order, disbarment with eligibility to petition for reinstatement after one year, is the equivalent of the sanction contained in Rule 771(c), "suspension for a specified period and until further order of court." (87 Ill. 2d R. 771(c).) The Administrator therefore submits that respondent be suspended for one year and until this court grants his Rule 767 (87 Ill. 2d R. 767) petition for reinstatement.

Turning now to Rule 763 (87 Ill. 2d 763), which addresses reciprocal actions, we note that the rule does not require a reciprocal sanction to be equivalent to that imposed by a sister State. Instead, it states that an attorney who has been disciplined in another State "may be subjected to the same discipline in this State, to run concurrently with the discipline in the foreign State ***." (87 Ill. 2d R. 763.) In accord with that language, we regard a sister State's sanction as persuasive, but not binding, when we seek the appropriate penalty to impose in Illinois. (*In re Kesler* (1982), 89 Ill. 2d 151, 154.) As a result, the final responsibility for determining the proper discipline in reciprocal cases rests with this court (*In re Neff* (1980), 83 Ill. 2d 20, 25), just as it does in proceedings that originate in Illinois (*In re Hopper* (1981), 85 Ill. 2d 318, 323; *In re Zahn* (1980), 82 Ill. 2d 489, 494).

In this case, we do not consider a suspension to be an unduly harsh penalty for respondent's conduct. We begin

by observing that the findings in the Missouri proceedings are *res judicata* and, as such, are not in dispute at this time. (*In re Kesler* (1982), 89 Ill. 2d 151, 154; *In re Neff* (1980), 83 Ill. 2d 20, 25-26.) The Missouri court found that respondent deposited Mrs. Duckett's funds into his own accounts, spent those funds, and reported them as his own for income tax purposes. These facts support a conclusion that respondent not only commingled his client's funds, but also converted them, at least technically, for his own use.

With this in mind, it appears that a suspension is not disproportionate to sanctions imposed in prior Illinois cases. This court has sternly cautioned against commingling a client's funds (*e.g., In re Clayter* (1980), 78 Ill. 2d 276, 278-79) and has recently suspended an attorney whose commingling led to a technical conversion. (*In re Grant* (1982), 89 Ill. 2d 247, 254-55 (two-year suspension).) Moreover, attorneys who outrightly converted their clients' funds have received penalties ranging from suspension to disbarment. (*E.g., In re Feldman* (1982), 89 Ill. 2d 7, 13-14 (disbarment); *In re Fumo* (1961), 22 Ill. 2d 429, 431-32 (two-year suspension).) Given these precedents, along with the persuasive nature of the Missouri sanction, we reject respondent's claim that his conduct warrants substantially less discipline in the nature of censure in this State.

We conclude that respondent should be suspended until reinstatement by the Supreme Court of Missouri. Once respondent has been reinstated in Missouri, however, he should not be required to suffer the delays associated with a petition for reinstatement pursuant to Rule 767 (87 Ill. 2d R. 767). Instead, he may be reinstated in Illinois upon filing with the clerk of this court a copy of the order reinstating him in Missouri.

However, respondent's suspension here should not ex-

tend indefinitely. He has already been out of the practice of law for a substantial period of time. So that his penalty may not be disproportionate to that imposed by this court for similar conduct, we add the following provisions: In the event that the Supreme Court of Missouri has not reinstated him by February 16, 1984 (the anniversary of his last application for readmission in Missouri), respondent may petition for reinstatement pursuant to amended Rule 767 (94 Ill. 2d R. 767). Should respondent reacquire his Missouri license while the Rule 767 proceeding is pending, he may gain readmittance in Illinois by filing the Missouri order with the clerk of this court.

*Respondent suspended.*