890 A.2d 751

**ATTORNEY GRIEVANCE COMMISSION OF MARYLAND**

v.

**H. Allen WHITEHEAD.**

**Misc. Docket AG No. 17, Sept. Term, 2005.**

Court of Appeals of Maryland.

Jan. 20, 2006.

Delores Dorsainvil, Asst. Bar Counsel (Melvin Hirshman, Bar Counsel for the Atty. Grievance Com'n of MD), for Petitioner.

Peter F. Axelrad of Council, Baradel, Kosmerl & Nolan, P.A., Annapolis, for Respondent.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE, JJ.

CATHELL, Judge.

H. Allen Whitehead, respondent, was disbarred by the District of Columbia Court of Appeals, based upon respondent's consent. Bar Counsel, on behalf of the Attorney Grievance Commission, petitioner, pursuant to Maryland Rule 16–773(b),[1] and based on the misconduct for which respondent was disbarred in the District of Columbia filed a Petition for Disciplinary or Remedial Action against respondent for violation of the Maryland Rules of Professional Conduct (MRPC).[2] The petition alleged that the respondent unethically and unprofessionally violated MRPC 8.4 and 1.15.[3] Petitioner also

---

1. Maryland Rule 16–773(b) provides:

   "(b) **Petition in Court of Appeals.** Upon receiving and verifying information from any source that in another jurisdiction an attorney has been disciplined or placed on inactive status based on incapacity, Bar Counsel may file a Petition for Disciplinary or Remedial Action in the Court of Appeals pursuant to Rule 16–751(a)(2). A certified copy of the disciplinary or remedial order shall be attached to the Petition, and a copy of the Petition and order shall be served on the attorney in accordance with Rule 16–753."

2. This Court adopted a new version of the Maryland Lawyer's Rules of Professional Conduct, effective 1 July 2005. Unless otherwise indicated, the MRPC sections applicable to this case are identical to the sections they replaced.

3. MRPC 8.4 entitled "Misconduct," provides:

alleged that respondent violated Maryland Rules 16–609 and Maryland Code (1989, 2004 Repl. Vol.), §§ 10–306 and 10–307 of the Business Occupations and Professions Article. On June 16, 2005, this Court issued a Show Cause Order pursuant to Maryland Rule 16–773(c).[4] Both parties filed their responses to the Show Cause Order and oral arguments were heard on December 5, 2005. Petitioner asked this Court to impose a "reciprocal"[5] sanction and disbar respondent. Respondent

---

"It is professional misconduct for a lawyer to:

(a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;

(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation; [or]

(d) engage in conduct that is prejudicial to the administration of justice ..."

MRPC 1.15 entitled "Safekeeping property," in effect at the time of the misconduct, provided in pertinent part:

"(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained pursuant to Title 16, Chapter 600 of the Maryland Rules. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and of other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.

(b) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property."

4. Maryland Rule 16–773(c) provides:

"**Show cause order.** When a petition and certified copy of a disciplinary or remedial order have been filed, the Court of Appeals shall order that Bar Counsel and the attorney, within 15 days from the date of the order, show cause in writing based upon any of the grounds set forth in section (e) of this Rule why corresponding discipline or inactive status should not be imposed."

5. Although the term "reciprocal" is in the language of the rule, no exact definition is provided. "Reciprocal" generally means to interact with the initiating party, i.e., reciprocal trade agreements and the like. It

argued that, under Maryland law, suspension was the appropriate sanction for his conduct.

## I. Facts

Respondent was admitted as a member of the Bar of this Court on December 1, 1973. He practiced in Maryland and the District of Columbia until 1999, when he moved to New York. Throughout his legal career, respondent has concentrated in estate and trusts law. In December of 1998, he became involved in the District of Columbia in the administration of the proceeds from a medical malpractice settlement. Then, in September of 1999, he was appointed as the Conservator of those funds.[6]

Upon allegations that respondent had paid legal fees to himself in the amount of $40,200.00 for his services in that case without prior court approval, he was removed from his post.[7] As a result of his conduct, the District of Columbia Bar

---

sometimes means to "return a favor" (though not the exact favor) or to return a harm or disservice (although not the same harm or disservice) to one who has done a favor or disservice to the reciprocating party. "Reciprocal" discipline is perhaps not the best phrase to use in a three party situation to describe that two separate entities are to separately address a third party's conduct, rather than to reciprocate in some fashion with each other. "Reactive" or "responsive" discipline, or some like term, would better describe the practice.

6. A Conservator is defined as "a person who is appointed by a court to manage the estate of a protected individual...." D.C.Code § 21–2011 (2001); see also Md.Code (1974, 2001 Rep. Vol.), § 14–401(d) of the Estates and Trusts Article ("a person appointed or qualified by a court to act as general, limited, or temporary guardian of an individual's property or a person legally authorized to perform substantially the same functions").

7. In its order removing respondent as Conservator, the probate court mentioned that there was an unresolved issue regarding a self-dealing transaction in the amount of $600,000.00. That court, however, did not issue any findings regarding inappropriate conduct with regard to those funds. Furthermore, other than the unresolved allegation brought up in the probate court, petitioner has not provided any evidence to support a finding of misconduct based upon that alleged misappropriation. The issue of the misappropriation of those funds was not ad-

Counsel initiated proceedings against respondent. Respondent represented himself during the disciplinary proceedings and, according to him, was led to believe that the infraction subjected him to automatic disbarment in the District of Columbia. Accordingly, respondent filed an affidavit consenting to disbarment from the Bar of the District of Columbia. In that affidavit, respondent admitted to taking the fees prior to court approval and stated that the fees were reimbursed. The District of Columbia Court of Appeals, on consideration of the affidavit, a report and recommendation from the Board on Professional Responsibility, and a letter from Bar Counsel, disbarred respondent by consent.

## II. Discussion

"Reciprocal" discipline cases are adjudicated according to Maryland Rule 16–773. Under subsection (b), "[u]pon receiving and verifying information from any source that in another jurisdiction an attorney has been disciplined ..., Bar Counsel may file a Petition for Disciplinary or Remedial Action in the Court of Appeals pursuant to Rule 16–751(a)(2)."[8] The Court, then, issues a show cause order as required by subsection (c). After the parties respond to the show cause order, the Court "*may* immediately impose *corresponding* discipline," assign the matter to a judge for a hearing, or enter "any other appropriate order." Rule 16–773(f) (emphasis added). This subsection, entitled "Action by Court of Appeals," makes it clear that it is within the Court's discretion as to which sanction should be imposed upon the attorney. The rule states that the Court *may* impose "corresponding discipline," not that it *shall* impose "identical discipline."

---

dressed by the District of Columbia Court of Appeals in the disbarment order and as a result it will not be addressed at this time.

8. Interestingly, the rule gives Bar Counsel the discretion to file a petition after it learns of an attorney's misconduct in another state as evidenced by the use of the permissive language "may file." It is argued, however, that—upon filing of the petition—this Court lacks any discretion in regards to the sanction being imposed under Rule 16–773(e), even though Bar Counsel has discretion not to file a petition in the first instance.

In making a determination in "reciprocal" disciplinary cases, this Court generally gives deference to the factual findings of the original jurisdiction:

"(g) **Conclusive effect of adjudication.** Except as provided in subsections (e)(1) and (e)(2) of this Rule, a final adjudication in a disciplinary or remedial proceeding by another court, agency, or tribunal that an attorney has been guilty of professional misconduct or is incapacitated is conclusive evidence of that misconduct or incapacity in any proceeding under this Chapter. The introduction of such evidence does not preclude the Commission or Bar Counsel from introducing additional evidence or preclude the attorney from introducing evidence or otherwise showing cause why no discipline or lesser discipline should be imposed."

Rule 16–773(g); *see also Attorney Grievance Comm'n v. Weiss*, 389 Md. 531, 886 A.2d 606 (2005); *Attorney Grievance Comm'n v. Scroggs*, 387 Md. 238, 249, 874 A.2d 985, 992 (2005); *Attorney Grievance Comm'n v. Ayres–Fountain*, 379 Md. 44, 56, 838 A.2d 1238, 1245 (2003); *Attorney Grievance Comm'n v. Cafferty*, 376 Md. 700, 703, 831 A.2d 1042, 1045–46 (2003).

In the case *sub judice*, the only factual finding by the District of Columbia Court of Appeals is contained in the order of disbarment by consent. The order states that the sanction is based upon respondent's affidavit in which he stated: "I was appointed as Conservator, I took fees (which later were reimbursed) prior to Court approval." In keeping with the general spirit of Rule 16–773(g) we accept the District of Columbia Court of Appeals' finding that respondent violated the rules of professional conduct by taking fees without prior court approval. We must, however, determine whether the sanction imposed by the District of Columbia Court of Appeals is appropriate under the circumstances of this case, especially since in this Court, the attorney has not consented to disbarment.

## A. Reciprocal Discipline Sanctions

Maryland Rule 16–773(e) is titled "exceptional circumstances," it provides that "[r]eciprocal discipline *shall not be*

*ordered* if Bar Counsel or the attorney demonstrates by clear and convincing evidence" any of five different conditions. Rule 16–773(e) (emphasis added).[9] It does not define the term "reciprocal discipline" as to whether it refers to process, findings, sanctions, or all three. The use of the language "shall not be ordered" does not imply that, in the absence of any of the five exceptions, the Court *shall* find that the same sanction must be imposed even if the findings of the foreign court as to misconduct are accepted. To the contrary, this language reads so as to limit the ability of this Court to rely solely on the original jurisdiction's findings as to misconduct when any of the enumerated exceptions are met. If Bar Counsel—or the sanctioned attorney—provides sufficient evidence showing that one or more of the exceptions exist, the Court cannot use its discretion as to whether to accept the findings as to misconduct and to impose a corresponding (but not necessarily the same) sanction, or a different sanction all together. If these exceptions exist, the Court cannot rely exclusively on the findings of the foreign jurisdiction and cannot summarily impose the same discipline. If, however, none of the exceptions exist the Court *may* do so.

In further interpreting the meaning of subsection (e), we must evaluate it in the context of the entire Rule 16–773. Subsection (b) provides that Bar Counsel "may" file a petition upon learning that an attorney has been disciplined in another state. Under subsection (d) the Court "may" suspend the attorney from practice while the proceedings in Maryland are taking place. Then, under subsection (f), the Court "may

---

**9.** Those exceptions are:

"(1) the procedure was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process;

(2) there was such infirmity of proof establishing the misconduct as to give rise to a clear conviction that the Court, consistent with its duty, cannot accept as final the determination of misconduct;

(3) the imposition of corresponding discipline would result in grave injustice;

(4) the conduct established does not constitute misconduct in this State or it warrants substantially different discipline in this State; or

(5) the reason for inactive status no longer exists."

Rule 16–773(e).

immediately impose corresponding discipline," or it "may" assign the case for a hearing, or it "may enter any other appropriate order." None of these provisions provide any indication that the findings and the sanction of the foreign court are required to be accepted. Only subsections (a), (c), and (h) use the mandatory language "shall." Subsection (a) requires that the attorney "shall" inform Bar Counsel if he or she has been disciplined in another state; subsection (c) states that the Court "shall" issue a show cause order; subsection (h) orders that when the case is stayed in the original jurisdiction, any proceedings under the rule "shall" be stayed. Subsection (g), which establishes that an adjudication in another state is conclusive evidence of misconduct, does not relate to sanctions.

In light of the fact that the sections dealing with sanctioning the attorney, (b), (d), and (f), use the permissive language "may," it is reasonable to interpret the use of the language "shall not be ordered . . . if" to be read as permissive language also. Were that section to be read as requiring the Court to impose the same or equivalent sanction (if one exists) unless any of the circumstances in subsection (e) were present, it would render—at the very least—part of subsection (f) meaningless.

The rule specifically provides that the Court shall not impose the same sanction if "the conduct established . . . *warrants substantially different discipline in this State.*" Rule 16–773(e)(4) (emphasis added). The most reasonable way to determine whether the attorney's conduct in another jurisdiction *warrants substantially different discipline in this state* is to review our own cases and determine which sanction would have been adequate had the case originated in this State. *Weiss*, 389 Md. at 548, 886 A.2d at 616.

This reading of the rule is consistent with practically every prior holding of this Court in "reciprocal" discipline cases. We have repeatedly stated that in these cases, we are prone, but not required, to impose the same sanction the original jurisdiction imposed. *Weiss*, 389 Md. at 546, 886 A.2d

at 615.[10] Furthermore, in "reciprocal" discipline cases "[w]e are required to assess for ourselves the propriety of the sanction imposed by the other jurisdiction and that recommended by the Commission." *Scroggs*, 387 Md. at 254, 874 A.2d at 995 (citing *Gittens*, 346 Md. at 326, 697 A.2d at 88). We have consistently pronounced:

> " 'When the Court considers the appropriate sanction in a case of reciprocal discipline, we look not only to the sanction imposed by the other jurisdiction *but to our own cases as well.* The sanction will depend on the unique facts and circumstances of each case, but with a view toward *consistent dispositions for similar misconduct.*' "

*Weiss*, 389 Md. at 548, 886 A.2d at 616 (emphasis added) (quoting *Attorney Grievance Comm'n v. Parsons*, 310 Md. 132, 142, 527 A.2d 325, 330 (1987)). We do not take this position lightly. The Court views it as a *duty* to "assess for itself the propriety of the sanction imposed by the other jurisdiction." *See e.g., Steinberg*, 385 Md. at 704 n. 9, 870 A.2d at 608 n. 9; *Ayres–Fountain*, 379 Md. at 57, 838 A.2d at 1246. It is clear that this language, used in essentially every "reciprocal" discipline case, would be meaningless were the Court to apply the same sanction regardless of the state of the law in Maryland with respect to the proscribed conduct. Certainly, as acknowledged in *Weiss*, many (if not most) times we will come to the same conclusion as the original jurisdiction and

---

**10.** This is a well settled principle of Maryland law: *Scroggs*, 387 Md. at 249, 874 A.2d at 992; *Attorney Grievance Comm'n v. Steinberg*, 385 Md. 696, 704 n. 9, 870 A.2d 603, 608 n. 9 (2005); *Ayres–Fountain*, 379 Md. at 56, 838 A.2d at 1245; *Cafferty*, 376 Md. at 703, 831 A.2d at 1045–46; *Attorney Grievance Comm'n v. Roberson*, 373 Md. 328, 355, 818 A.2d 1059, 1076 (2003); *Attorney Grievance Comm'n v. McCoy*, 369 Md. 226, 236, 798 A.2d 1132, 1137–38 (2002); *Attorney Grievance Comm'n v. Ruffin*, 369 Md. 238, 253, 798 A.2d 1139, 1148 (2002); *Attorney Grievance Comm'n v. Dechowitz*, 358 Md. 184, 192, 747 A.2d 657, 661 (2000); *Attorney Grievance Comm'n v. Richardson*, 350 Md. 354, 371, 712 A.2d 525, 533 (1998); *Attorney Grievance Comm'n v. Sabghir*, 350 Md. 67, 83, 710 A.2d 926, 934 (1998); *Attorney Grievance Comm'n v. Gittens*, 346 Md. 316, 325, 697 A.2d 83, 88 (1997); *Attorney Grievance Comm'n v. Willcher*, 340 Md. 217, 221–22, 665 A.2d 1059, 1061 (1995); *Attorney Grievance Comm'n v. Saul*, 337 Md. 258, 267, 653 A.2d 430, 434 (1995).

impose an identical sanction. *See e.g., Willcher*, 340 Md. at 220, 665 A.2d at 1060; *Roberson*, 373 Md. at 357, 818 A.2d at 1077; *Cafferty*, 376 Md. at 728, 831 A.2d at 1059; *Attorney Grievance Comm'n v. Moore*, 301 Md. 169, 171, 482 A.2d 497, 498 (1984). When our cases, however, clearly demonstrate that we would apply a different sanction—had the conduct occurred or the case originated here—we need not follow the original jurisdiction's determination. To always follow the same sanction imposed by the originating jurisdiction might result in two different lines of sanctions for identical conduct; one in "reciprocal" cases and a different one in cases originating in Maryland. This would lead to an inconsistency in sanctions that we try to avoid.

■ We have applied this principle in a number of occasions. Most recently in *Weiss*, we found that disbarment was the appropriate sanction in Maryland for an attorney after he had been suspended in the District of Columbia for embezzling funds from his law firm. We determined that when the conduct involves stealing or like offenses, our cases clearly indicate that disbarment is the appropriate sanction absent compelling extenuating circumstances as the root cause of the misconduct. *Weiss*, 389 Md. at 553, 886 A.2d at 618–19; *see also Attorney Grievance Comm'n v. Goodman*, 381 Md. 480, 850 A.2d 1157 (2004); *Attorney Grievance Comm'n v. Post*, 379 Md. 60, 839 A.2d 718 (2003); *Attorney Grievance Comm'n v. Spery*, 371 Md. 560, 810 A.2d 487 (2002); *Attorney Grievance Comm'n v. Vanderlinde*, 364 Md. 376, 773 A.2d 463 (2001). In *Dechowitz*, this Court found that a conviction for possession of marijuana with intent to distribute required disbarment in Maryland, even though Dechowitz was only suspended in California where the conduct took place. *Dechowitz*, 358 Md. at 192, 747 A.2d at 661. The District of Columbia and California courts imposed a different sanction from that which we normally imposed in such cases originating in Maryland. Thus, we declined to impose the same sanction. This principle is not only followed when the original jurisdiction does not impose a sanction that is as severe as we would

impose had the conduct originated here, we also follow it when a lesser sanction is consistent with our experience.

■ In *Parsons*, two attorneys were suspended for six months in the District of Columbia for forging a client's signature on a divorce complaint. *Attorney Grievance Comm'n v. Parsons*, 310 Md. 132, 527 A.2d 325 (1987). This Court determined that a ninety day suspension was the appropriate sanction in Maryland, due to a similar case decided eight months earlier. *Parsons*, 310 Md. at 142, 527 A.2d at 330 (citing *Attorney Grievance Comm'n v. Maxwell*, 307 Md. 600, 516 A.2d 570 (1986) (holding that a ninety day suspension was appropriate for an attorney's false signature on a deed)). Even though attorney discipline is for the primary purpose of protecting the public, the bar and public policy are served best by determinations consistent with other Maryland sanctions for similar misconduct.

## B. Public Policy for Attorney Discipline

■ The primary purpose of attorney discipline is the protection of the public, not the punishment of the attorney. *Weiss*, 389 Md. at 547, 886 A.2d at 615; *Scroggs*, 387 Md. at 254, 874 A.2d at 995; *Steinberg*, 385 Md. at 703, 870 A.2d at 607; *Ayres–Fountain*, 379 Md. at 58, 838 A.2d at 1246; *Cafferty*, 376 Md. at 727, 831 A.2d at 1059; *Roberson*, 373 Md. at 356, 818 A.2d at 1076; *McCoy*, 369 Md. at 237, 798 A.2d at 1138. As Chief Judge Bell stated for the Court:

> " 'We have recognized that the public interest is served when this Court imposes a sanction which demonstrates to members of the legal profession the type of conduct that will not be tolerated.... Moreover, such a sanction represents the fulfillment by this Court of its responsibility "to insist upon the maintenance of the integrity of the bar and to prevent the transgression of an individual lawyer from bringing its image into disrepute."... Therefore, the public interest is served when *sanctions designed to effect general and specific deterrence are imposed on an attorney* who violates the disciplinary rules.... Of course, what the ap-

propriate sanction for the particular misconduct is, in the public interest, generally depends upon the facts and circumstances of the case.... The attorney's prior grievance history, as well as facts in mitigation, constitute part of those facts and circumstances.'"

*Attorney Grievance Comm'n v. Sperling*, 380 Md. 180, 191, 844 A.2d 397, 404 (2004) (emphasis added) (quoting *Attorney Grievance Comm'n v. Myers*, 333 Md. 440, 447, 635 A.2d 1315, 1318 (1994)). This goal of effecting general and specific deterrence is best achieved by ensuring that every member of the bar clearly understands the standards of conduct to which he or she is expected to adhere and the consequences of failing to meet those standards. One of our goals, in maintaining these standards is to ensure that *consistent determinations* as to sanctions for similar misconduct are reached in our cases. Whether the case arises in this jurisdiction, or it comes to us as a "reciprocal" discipline case, does not change this Court's duty to apply consistent treatment, i.e., sanctions-as far as is possible.

Our position on sanctions in "reciprocal" cases has to do with ensuring consistency, which in turn provides the appropriate deterrent for incompetent, unscrupulous or unethical lawyers. Nor do we abandon well reasoned principles of comity in reaching our decision. As required by Rule 16–773(g), the heaviest weight is given to our sister jurisdictions' factual findings. From them we rarely stray. We deviate from their sanctions, however, when the history of our cases warrants a substantially different disposition, such as is the case here.

### C. Appropriate Sanction in Maryland

In the case *sub judice* we must determine what sanction is typically imposed in Maryland when an attorney takes fees from funds held in trust without prior court approval. In *Attorney Grievance Commission v. Owrutsky*, 322 Md. 334, 587 A.2d 511 (1991), an attorney took fees from two "estates before they were earned and before approval of the Orphans' Court had been sought or obtained." *Id.* at 341, 587 A.2d at

514. The Court determined that his actions in taking the fees without approval and proper accounting came "perilously close to misappropriation of funds for which, in the absence of extenuating circumstances, disbarment is ordinarily the appropriate sanction." *Id.* at 355, 587 A.2d at 521. The attorney, however, was suspended for a period of three years instead, based on the totality of the circumstances, including the fact that he had been a member of the Bar for nearly thirty years without a record of previous misconduct. *Id.* In the case at bar, respondent did not take the fees before they were improperly accounted for or earned. Respondent practiced in Maryland for twenty-six years before moving to New York and petitioner did not provide any evidence that respondent was disciplined on any other occasion. From the record it is not apparent that respondent's conduct was intentional. Furthermore, he returned the unapproved fees upon learning that taking them without approval was inappropriate.

In *Attorney Grievance Commission v. Thompson*, 376 Md. 500, 519, 830 A.2d 474, 485 (2003), an attorney violated the rules of professional conduct when he failed to pay employee withholding taxes and "by improperly handling the . . . estate, *i.e.*, improperly distributing the assets, not paying inheritance taxes before distributing the assets, suing the heirs, distributing less than the heirs were entitled to under the will, and then, to add insult to injury, *retaining the $16,000.00 commission.*" (Emphasis added). The attorney had received a check for his commission, which he deposited into his personal account without approval from the Orphans' Court. We imposed an *indefinite suspension* with the right to reapply after one year. In the case *sub judice*, the only confirmed allegation against respondent is that he paid himself fees, which he had earned, without prior court approval.

*Attorney Grievance Commission v. Seiden*, 373 Md. 409, 818 A.2d 1108 (2003), is also illustrative. In that case, an attorney managing an estate for a difficult client took his fee from the proceeds of a settlement without submitting a fee petition to the Orphans' Court. We imposed an *indefinite suspension* with the right to reapply within thirty days. *Id.* at

425, 818 A.2d at 1117. In arriving at our decision we took into consideration a number of mitigating factors: it was the attorney's first disciplinary proceeding in twenty-four years of practice, there was no evidence of intentional misappropriation or dishonesty, the attorney was remorseful for his conduct, he was cooperative throughout the proceedings, and the reason he had not filed the fee petition was due to his ill health. *Id.*; see also *Attorney Grievance Comm'n v. Sperling*, 380 Md. 180, 844 A.2d 397 (2004) (attorney's negligent management of a trust account resulted in a $42,415.91 shortfall. The Court imposed an *indefinite suspension* with the right to reapply for admission after ninety days.); *Attorney Grievance Comm'n v. Culver*, 371 Md. 265, 808 A.2d 1251 (2002) (attorney collected $3,500.00 from his escrow account for services rendered to clients who challenged the fees and the attorney failed to have a written contingency agreement. The Court imposed an *indefinite suspension* with the right to reapply after thirty days).

As demonstrated in the cases cited *supra*, the appropriate sanction for respondent's misconduct in Maryland is an indefinite suspension and not disbarment.

## D. Comity

Because our decision today affects the weight given to the decisions of other states, we now address the role of comity [11]

---

11. BLACK'S LAW DICTIONARY 284 (8th ed. 2004) defines comity as:

"1. A practice among political entities (as nations, states, or courts of different jurisdictions), involving esp. mutual recognition of legislative, executive, and judicial acts.—Also termed *comitas gentium; courtoisie internationale.* See FEDERAL COMITY DOCTRINE; JUDICIAL COMITY Cf. ABSTENTION

'"Comity," in the legal sense, is neither a matter of absolute obligation, on the one hand, nor of mere courtesy and good will, upon the other. But it is the recognition which one nation allows within its territory to the legislative, executive, or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens, or of other persons who are under the protection of its laws.' *Hilton v. Guyot*, 159 U.S. 113, 163–64, 16 S.Ct. 139, 143, 40 L.Ed. 95 (1895)."

in the context of attorney discipline.[12]  The Supreme Court of

---

12.  Every state in the country has a "reciprocal" discipline rule.  Sixteen states adhere to the American Bar Association's Model Rules for Lawyer Disciplinary Enforcement DR 22 (2001), which provide that the "court shall impose the identical discipline ... unless disciplinary counsel or the lawyer demonstrates" that any of the enumerated exceptions exist.  DR 22;  D.C. Bar R. XI § 11(c);  Haw R. 2;  Ky. R. 3.435;  La. R. XIX § 21(D);  Mont. Rules for Lawyer Disciplinary Enforcement R. 27(D);  Nev. S.Ct. R. 114(4);  N.H. S.Ct. R. 37(12);  N.D. Rules for Lawyer Discipline R. 4.4(D);  Ohio Rules for the Gov't of the Bar V § 11(F);  R.I. S.Ct. Rules art. III, R. 14;  S.C. Appellate Ct. R. 413 § IV R. 29;  S.D. Codified Laws § 16–19–74 (1995);  Tenn. S.Ct. R. 9 § 17;  Vt. Permanent Rules Governing Establishment and Operation of the Prof'l Responsibility Program R. 20;  Wis. S.Ct. R. 22.22;  Disciplinary Code for the Wyo. State Bar § 20.

Alaska's rule provides that the court "will" impose identical discipline in the absence of the enumerated circumstances.  Alaska Bar R. 27.  Washington's rule states that the court "imposes identical discipline ... unless."  Wash. Rules for Enforcement of Lawyer Conduct R. 9.2.

Five states mandate their disciplinary committees to impose the same discipline.  Ala. R. Disc. P. 25;  Colo. Ct. R. 251.21;  N.C. Bar R. .0116;  Tex. Gov't Code Ann., tit. 2, subt. G, Appendix A–1, Disc. Proc. R. 9.03 (Vernon 2004);  Va. S.Ct. R. Part Six § IV ¶ 13.  Four other states mandate their disciplinary boards to recommend identical discipline.  Del. R. 18(d);  Ga. R. 4–102 § 9.4(b);  N.J. R. 1:20–14(a)(4);  W.V. Rules of Lawyer Disciplinary Procedure R. 3.20.  In Arizona, "the commission shall impose or recommend the identical or substantially similar discipline unless ..."Ariz. S.Ct. R. 53(i)(3).

Utah requires that equivalent discipline be imposed.  Utah Rules of Lawyer Discipline and Disability R. 22(d).  While Connecticut provides that the "court shall take commensurate action unless ..." Conn.Super. Ct. R. 2–39.

Arkansas is the only state in which, by rule, discipline in another state automatically operates as the disciplinary sanction in that state.  Procedures of the Ark. S.Ct. Regulating Prof'l Conduct of Attorneys § 14(a).

Some states have chosen the permissive language "may impose" as opposed to "shall impose."  Ill. S.Ct. R. 763;  Iowa R. 35.18;  Me. Bar R. 7.3(h);  Mass. R. 4:01 § 16;  Minn. Rules on Lawyers Prof'l Responsibility R. 12(d);  Miss. Rules of Discipline R. 13;  Neb. Disciplinary R. 21;  N.M. R. 17–210;  N.Y. R. 806.19;  Pa. Rules of Disciplinary Enforcement R. 216.

Some other states, while finding that misconduct in a different state is conclusive evidence of misconduct, must determine under their state law what the sanction should be.  Cal. Business and Professions Code § 6049.1 (2003);  Idaho Bar Comm'n R. 513;  Mich. R. 9.104(B);  Or. Bar R. 3.5.

Three other states only address the conclusive effect of the original jurisdiction's factual findings, without mentioning the weight of the sanction.  Fla. Bar R. 3–4.6;  Kan. R. 202;  Mo. R. 5.20.

Florida has provided a very persuasive explanation of the "reciprocal" discipline doctrine. In reviewing that state's policy, the court stated:

"Here we note that to hold that Florida is not obligated to recognize and enforce the New York judgment of disbarment does not mean that it cannot do so if it elects. This brings us to an interpretation of Rule 11.02(6) and the determination of what effect this court intended to give foreign judgments of disbarment or other discipline when it adopted the rule.

"In considering the question of the effect to be given disciplinary judgments of a sister state, this court could have adopted the extreme position under which no recognition would be given such a judgment. The rational for rejecting this position is well explained in *Selling v. Radford*, 1916, 243 U.S. 46, 49, 37 S.Ct. 377, 61 L.Ed. 585. Alternatively, the court could have adopted the opposite extreme under which such a judgment would be given automatic and complete effect by imposing the same discipline in Florida as imposed in a sister state.

"In our view adoption of either of these extremes would amount to an abdication of this court's responsibility imposed by the Florida constitution. On the one hand, to ignore acts of professional misconduct merely because they occurred outside this state would be to ignore our duty to protect the people of this state from one who has been held by another state to be an unfit practitioner. On the other hand, to accept the second extreme would constitute an abdication of the responsibility imposed on this court to determine for itself, in proceedings conducted by it, or

---

The least restrictive state allows their courts to impose the same or different sanction without requiring any deference to the original jurisdiction. Okla. Stat. tit. 5, Appendix 1–A R. 7.7 (2001).

Maryland's language is different to that used by every other state. Under Rule 16–773(c) the court "shall not impose the same discipline ... if...." This language of limitation is clearly different than the mandatory language under most state rules and the ABA model rules which state that the court "shall impose ... unless."

under its direction, the fitness of those permitted to practice in this state. To give automatic and unquestioning effect to the judgment of a foreign tribunal would be to fail to exercise the discretion vested in this court by our state constitution.

"By adopting Rule 11.02(6) we took a reasonable position between the two extremes above mentioned. By the plainest language the rule makes such a foreign judgment of guilt conclusive proof of such misconduct in a disciplinary proceeding in this state. Proof of guilt of the acts of misconduct adjudicated in the sister state is accomplished by simply proving the entry of the foreign judgment. This eliminates any necessity to retry the bare issue of guilt and makes unnecessary the production in Florida of testimony and evidence on this issue. The rule nether [sic] prescribes nor proscribes professional behavior. It relates solely to the question of proof of guilt."

*Florida Bar v. Wilkes,* 179 So.2d 193, 196–97 (Fla.1965); *see also Florida Bar v. Mogil,* 763 So.2d 303 (Fla.2000). Florida's current "reciprocal" discipline rule provides that the other jurisdiction's findings are conclusive proof of misconduct. Fla. Bar R. 3–4.6. This rule only addresses the weight of the other state's determination that misconduct has occurred and not the sanction to be imposed by the Supreme Court of Florida.

Other states also recognize that in "reciprocal" discipline cases, while accepting another jurisdictions findings of misconduct, the "ultimate responsibility for determining what sanction should be imposed" rests on the state in which the attorney is facing "reciprocal" discipline. *Idaho State Bar v. Everard,* 142 Idaho 109, 124 P.3d 985 (2005); *In re Witte,* 99 Ill.2d 301, 310, 458 N.E.2d 484, 488, 76 Ill.Dec. 84, 88 (1983) ("[W]e regard a sister State's sanction as persuasive, but not binding, when we seek the appropriate penalty to impose in Illinois."); *In re Rickabaugh,* 661 N.W.2d 130, 133 (Iowa 2003) ("Determining a revocation in Nebraska is the same as a revocation in Iowa does not end our inquiry. We still must address Rickabaugh's claim that the disbarment imposed in Nebraska is more severe than the sanction he would have

received in Iowa for the same conduct."); *In re Kersey,* 444 Mass. 65, 70, 825 N.E.2d 994, 998 (2005) ("On a matter of reciprocal discipline, 'we may impose whatever level of discipline is warranted by the facts even if that discipline exceeds, equals, or falls short of the discipline imposed in another jurisdiction.'"). The Supreme Court of Connecticut has interpreted its "reciprocal" discipline rule, stating that "'commensurate action' under [the "reciprocal" discipline rule] does not mean 'identical action.' The trial court had inherent judicial power, derived from judicial responsibility for the administration of justice, to exercise sound discretion to determine what sanction to impose in light of the entire record before it." *In re Weissman,* 203 Conn. 380, 384, 524 A.2d 1141, 1143 (1987) (a "reciprocal" discipline case from the District Court for the District of Connecticut). This "commensurate" language is very similar to the language of Maryland Rule 16–773(f), which states that the Court "may immediately impose *corresponding* discipline." As explained *supra,* the use of the word *corresponding* does not necessarily mean *identical.* One of the meanings of "correspond" is to be "equivalent in function," another is "having an obvious similarity, although not agreeing in every detail." [13]

The Supreme Court of Missouri has made it clear that the court "makes its own independent judgment as to the fitness of the members of its bar." *In re Storment,* 873 S.W.2d 227, 230 (Mo.1994) (en banc) (finding that disbarment was the appropriate sanction for an attorney who had been suspended in Illinois). The Supreme Court of Nebraska has recognized that

"[t]his court has, on occasion, sanctioned attorneys who had already been disciplined by the state in which the ethical violation occurred. See, *State ex rel. NSBA v. Gallner,* 263 Neb. 135, 638 N.W.2d 819 (2002) (following imposition of 6–month suspension in Iowa, formal charges in Nebraska based on same conduct resulted in 1–year suspen-

---

**13.** RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE 328 (Unabridged ed. 1966).

sion); *State ex rel. NSBA v. Frederiksen,* 262 Neb. 562, 635 N.W.2d 427 (2001) (following issuance of public reprimand in Iowa, formal charges in Nebraska based on same conduct resulted in 3-year suspension). Such does not offend the principles of full faith and credit. *Kentucky Bar Ass'n v. Signer,* 533 S.W.2d 534 (Ky.1976), succinctly analyzes such notion."

*State ex rel. Counsel for Discipline of the Nebraska Supreme Court v. Rokahr,* 267 Neb. 436 444, 675 N.W.2d 117, 124 (2004). That court has also stated that "[t]he propriety of a sanction must be considered with reference to the sanctions imposed by this court in prior cases presenting similar circumstances." *State ex rel. NSBA v. Gallner,* 263 Neb. 135, 139, 638 N.W.2d 819, 823 (2002); *see also In re Lichtenberg,* 117 N.M. 325, 327, 871 P.2d 981, 983 (1994) (in New Mexico, the Court reviews its prior cases in determining the appropriate sanction). In New York, an appellate court refused to impose "reciprocal" discipline, suspending for one year an attorney who had been disbarred in Maryland for unauthorized practice of law. *In re Alsafty,* 5 A.D.3d 976, 774 N.Y.S.2d 583 (2004).

Oregon takes the least deferential approach in "reciprocal" discipline cases. In the Supreme Court of Oregon's view: " 'In determining an appropriate sanction, . . . this court focuses on the accused's misconduct under the Oregon disciplinary rules. We do so because our choice of a sanction vindicates the judicial authority of this jurisdiction, not of the one in which the earlier discipline occurred.' " *In re Coggins,* 338 Or. 480, 485, 111 P.3d 1119, 1121 (2005) (en banc).

In at least one jurisdiction where the rule states that the court *shall* impose identical sanctions, courts have still found that substantially different sanctions are warranted based upon their own treatment of the type of offenses charged. In Colorado an attorney was disbarred although the original jurisdiction, Arizona, had only suspended him for six months. *People v. Apker,* 67 P.3d 23, 25 (Colo.2003). The Arizona court had found that the attorney had stolen client funds. *Id.* He was disbarred in Colorado because "[t]he knowing conversion of client property almost invariably results in disbarment

under Colorado law." *Id.* As a result, the disciplinary board determined that a substantially different sanction was necessary from that imposed in Arizona. *Id. See also People v. Costa,* 56 P.3d 130 (Colo.2002).

We are mindful of the deference to be granted other states in their decisions regarding similar conduct. We give that deference where it is due: to the other jurisdiction's factual findings. In terms of sanctions in "reciprocal" cases, we agree with those jurisdictions that reserve the right to impose a sanction which is consistent with others imposed in cases originating in their jurisdictions. This policy is sound in that it ensures that every member of the Maryland Bar is held to the same standards regardless of where their misconduct takes place.

### III. Conclusion

Maryland Rule 16–773 governs discipline cases in which a foreign state has already acted to discipline the attorney for the same misconduct. Under that rule this Court may also impose a sanction upon a Maryland attorney who has already been disciplined in another jurisdiction for the same misconduct. This rule, however, does not mandate that the same sanction must be imposed. In these types of case, this Court gives great deference to the other jurisdiction's factual findings. In addition, we are duty-bound to examine the other jurisdiction's sanction and determine whether that sanction is consistent with our disciplinary precedent. Where Maryland attorneys are given a substantially different sanction for similar conduct in cases originating in this State, to that imposed in the originating state, we may not follow the original jurisdiction's finding as to the sanction imposed. This result supports our policy of providing consistency in sanctioning for similar conduct for all members of the Maryland Bar. It furthers our goal to protect the public by ensuring that every Maryland attorney is held to consistent standards of conduct.

Indefinite suspension with the right to reapply after eighteen months is the appropriate sanction in this State.

IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED, FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION OF MARYLAND AGAINST H. ALLEN WHITEHEAD.

BELL, C.J., files a dissenting opinion joined by RAKER and WILNER, JJ.

BELL, Chief Judge, dissenting joined by RAKER and WILNER, JJ.

The majority's reasoning for refusing to impose reciprocal discipline in this case is threefold: the respondent was disbarred in the District of Columbia for one act of misappropriation, not two, and thus only that first act will be considered by this Court; the imposition of reciprocal discipline under Maryland Rule 16-773 [1] is purely discretionary; and the respondent

---

1. Maryland Rule 16-773 provides, in its entirety:

"(a) *Duty of Attorney.* An attorney who in another jurisdiction (1) is disbarred, suspended, or otherwise disciplined, (2) resigns from the bar, while disciplinary or remedial action is threatened or pending in that jurisdiction, or (3) is placed on inactive status based on incapacity *shall inform* Bar Counsel promptly of the discipline, resignation, or inactive status.

"(b) *Petition in Court of Appeals.* Upon receiving and verifying information from any source that in another jurisdiction an attorney has been disciplined or placed on inactive status based on incapacity, Bar Counsel *may* file a Petition for Disciplinary or Remedial Action in the Court of Appeals pursuant to Rule 16-541(a)(2). A certified copy of the disciplinary or remedial order should be attached to the Petition, and a copy of the Petition and order shall be served on the attorney in accordance with Rule 16-753.

"(c) *Show cause order.* When a petition and certified copy of a disciplinary or remedial order have been filed, the Court of Appeals *shall* order that Bar Counsel and the attorney, within 15 days from the date of the order, show cause in writing based upon any of the grounds set forth in section (e) of this Rule why corresponding discipline or inactive status *should not be* imposed.

"(d) *Temporary suspension of attorney.* When the petition and disciplinary or remedial order demonstrate that an attorney has been disbarred or is currently suspended from practice by final order of a court in another jurisdiction, the Court of Appeals *may* enter an order, effective immediately, suspending the attorney from the prac-

has demonstrated extenuating circumstances under Rule 16–773(e)(4), which warrant a sanction less than disbarment. All of these conclusions are incorrect, and the Court's analysis is based upon a faulty interpretation of Rule 16–773.

## I.

The District of Columbia Court of Appeals disbarred H. Allen Whitehead, the respondent, pursuant to Rule XI, § 12 of the Rules Governing the Admission to the Bar of the District

tice of law, pending further order of Court. The provisions of Rule 16–760 apply to an order suspending an attorney under this section.

"(e) *Exceptional circumstances.* Reciprocal discipline *shall not* be ordered if Bar Counsel or the attorney demonstrates by clear and convincing evidence that:

"(1) the procedure was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process;

"(2) there was such infirmity of proof establishing the misconduct as to give rise to a clear conviction that the Court, consistent with its duty, cannot accept as final the determination of misconduct;

"(3) the imposition of corresponding discipline would result in grave injustice;

"(4) the conduct established does not constitute misconduct in this State or it warrants substantially different discipline in this State; or

"(5) the reason for inactive status no longer exists.

"(f) *Action by Court of Appeals.* Upon consideration of the petition and any answer to the order to show case, the Court of Appeals *may* immediately impose corresponding discipline or inactive status, *may* enter an order designating a judge pursuant to Rule 16-752 to hold a hearing in accordance with Rule 16–757, or *may* enter any other appropriate order. The provisions of this Rule 16–760 apply to an order under this section that disbars or suspends an attorney or that places the attorney on inactive status.

"(g) *Conclusive Effect of Adjudication.* Except as provided in subsections (e)(1) and (e)(2) of this Rule, a final adjudication in a disciplinary or remedial proceeding by another court, agency, or tribunal that an attorney has been guilty of professional conduct or is incapacitated is conclusive evidence of that misconduct or incapacity in any proceeding under this Chapter. The introduction of such evidence does not preclude the Commission or Bar Counsel from introducing additional evidence or preclude the attorney from introducing evidence or otherwise showing cause why no discipline or lesser discipline should be imposed.

"(h) *Effect of stay in other jurisdiction.* If the other jurisdiction has stayed the discipline or inactive status, any proceedings under this

of Columbia,[2] which provides for disbarment by consent. The ground on which the respondent was disbarred was stated in the respondent's affidavit accompanying the petition for disbarment—he admitted: "In the Matter of Reginald Grayson, Intvp. No. 195–94, wherein I was appointed as Conservator, I took fees (which were later reimbursed) prior to Court approval." To be sure, in his affidavit, the respondent made no mention of, and certainly did not admit to, misappropriating $600,000 of estate funds, which, Bar Counsel alleged, he used for a real estate investment; instead, as we have seen, he only admitted taking legal fees without Court consent. It is, thus, arguable, as the majority concludes, that it was only on that basis that the respondent was disbarred.[3]

---

rule shall be deferred until the stay is no longer operative and the discipline or inactive status becomes effective." (emphasis added).

2. "Section 12.  Disbarment by Consent

"(a) Required affidavit.  An attorney who is the subject of an investigation or a pending proceeding based on allegations of misconduct may consent to disbarment, but only by delivering to Bar Counsel an affidavit declaring the attorney's consent to disbarment and stating:

"(1) That the consent is freely and voluntarily rendered, that the attorney is not being subjected to coercion or duress, and that the attorney is fully aware of the implication of consenting to disbarment;

"(2) That the attorney is aware that there is currently pending an investigation into, or a proceeding involving, allegations of misconduct, the nature of which shall be specifically set forth in the affidavit;

"(3) That the attorney acknowledges that the material facts upon which the allegations of misconduct are predicated are true;  and

"(4) That the attorney submits the consent because the attorney knows that if disciplinary proceedings based on the alleged misconduct were brought, the attorney could not successfully defend against them.

"(b) Action by the Board and the Court.  Upon receipt of the required affidavit, Bar Counsel shall file it and any related papers with the Board for its review and approval.  Upon such approval, the Board shall promptly file it with the Court.  The Court thereafter may enter an order disbarring the attorney on consent.

"(c) Access to records of disbarment by consent.  The order disbarring an attorney on consent shall be a matter of public record. However, the affidavit required under subsection (a) of this section shall not be publicly disclosed or made available for use in any other proceeding except by order of the Court or upon written consent of the attorney."

3.  It is incorrect to state that neither of the District of Columbia courts— neither the Superior Court nor the Court of Appeals—had determined that the respondent had misappropriated the $600,000, in addition to

That the respondent's admission in the District of Columbia attorney discipline case was limited to the fee payment, and did not include the self-dealing alleged, is, in truth, immaterial to the proper analysis under Rule 16–773. Applying the proper analysis demonstrates that disbarment is the only appropriate sanction.

Moreover, in this Court the respondent's status is not simply that of one who has consented to disbarment; rather, on the basis of that consent [4]—from the admission it con-

---

taking legal fees. In its December 3, 2003 Order removing the respondent as conservator for the Reginald Grayson, Jr. estate, the Superior Court stated:

> "The Court heard the representations and admissions from Michael Grady, made on behalf of the Conservator, H. Allen Whitehead. The Conservator, by and through his attorney, admitted on the record that he had violated D.C.Code § 21–2060, D.C.Code 21–2068, SCR–PD 5(c) and SCR–PD 308. *Specifically, the Conservator admitted that he paid legal fees of $40,200.00 to himself without prior authorization and he entered into a self-dealing mortgage investment transaction, $600,000.00 of the adult ward's assets for the purchase of property located in New York City for himself and Aric Johnson*—such an investment by the Conservator represents a clear conflict of interest. Notwithstanding the Conservator's on the record admissions, Conservator seeks to tender his resignation to the Court, in lieu of removal from his post." (emphasis added).

Further, **in the attorney discipline case**, Bar Counsel for the District of Columbia specifically averred that the respondent had misappropriated funds on two occasions, began an investigation on both counts, and sought consent from respondent on both bases. Therefore, while it is true that the District of Columbia Court of Appeals did not specifically disbar the respondent based on his misappropriation of $600,000, because the respondent did not specifically admit such behavior in his affidavit, the record clearly demonstrates that the respondent did admit to two incidents of misappropriation.

4. Noting that "this Court generally gives deference to the factual findings of the original jurisdiction," *Attorney Griev. Comm'n v. Whitehead*, 390 Md. 663, 669, 890 A.2d 751, 754 (2005), the majority accepted the District of Columbia Court of Appeals' determination that the respondent violated the rules of professional conduct. *Id.* at 669, 890 A.2d at 755. The only conceivable basis for that determination was the respondent's affidavit, in which his consent to disbarment is found.

I note that this Court's cases are clear, pursuant to Rule 16–773(g), *see infra,* note 4, that we do not relitigate factual matters or a final adjudication by another appropriate tribunal in a disciplinary proceed-

tained—he has been found by the hearing court to have violated Rule 8.4(a), (b), (c) and (d). Either subsection (b) or (c) constitutes a finding of intentional misappropriation of estate funds. That finding, in turn, is supported by the respondent's admission that he took fees from the estate, as to which he was conservator, without court permission. *In re Reginald Grayson, Jr.,* No. 195–94, Superior Court of the District of Columbia. In other cases, in which the hearing court has found a violation of Rule 8.4(b) or (c), where there has been an inappropriate handling of monies or in which a trust account has been out of balance, we have refused to allow a respondent to be heard to say, and certainly not to succeed in the argument, that there was no misappropriation found or that it was not intentional. *Attorney Griev. Comm'n v. Cafferty,* 376 Md. 700, 723, 831 A.2d 1042, 1056–7 (2003); *Attorney Griev. Comm'n v. Sabghir,* 350 Md. 67, 68, 710 A.2d 926, 926 (1998); *Attorney Griev. Comm'n v. Gittens,* 346 Md. 316, 325, 697 A.2d 83, 88 (1997); *Attorney Griev. Comm'n v. Willcher,* 340 Md. 217, 221–222, 665 A.2d 1059, 1061 (1995); *Attorney Griev. Comm'n v. Sparrow,* 314 Md. 421, 425, 550 A.2d 1150, 1152 (1989).

There is, consequently, another basis for imposing the sanction the District of Columbia court imposed. That basis, moreover, is consistent with the majority's desire and apparent determination, to attain, and to maintain, internal consistency in attorney discipline cases. As we have so often stated, disbarment is the inexorable result of a finding of misappropriation, absent compelling extenuating circumstances. *Attorney Griev. Comm'n v. Bakas,* 323 Md. 395, 403, 593 A.2d 1087, 1091 (1991); *Attorney Griev. Comm'n v. Spery,* 371 Md. 560, 568, 810 A.2d 487, 491–92 (2002); *Attorney Griev. Comm'n v.*

---

ing, *see Attorney Griev. Comm'n v. Sabghir,* 350 Md. 67, 68, 710 A.2d 926, 926 (1998); *Attorney Griev. Comm'n v. Gittens,* 346 Md. 316, 325, 697 A.2d 83, 88 (1997); *Attorney Griev. Comm'n v. Willcher,* 340 Md. 217, 221–222, 665 A.2d 1059, 1061 (1995); *Attorney Griev. Comm'n v. Sparrow,* 314 Md. 421, 550 A.2d 1150 (1988); thus, we accept the factual findings and the adjudication as "conclusive evidence of [the] misconduct" found in those proceedings.

*Sullivan,* 369 Md. 650, 655–56, 801 A.2d 1077, 1080 (2002); *Attorney Griev. Comm'n v. Vanderlinde,* 364 Md. 376, 410, 773 A.2d 463, 483 (2001). That the respondent did not appreciate, or was not told, that disbarment need not be the sanction for the premature taking of a fee is neither a compelling nor extenuating circumstance.

## II.

A definition of "reciprocal" is "corresponding; equivalent." (Blacks Law Dictionary, 7th Edition, 2000). "Corresponding" means "to be analogous or similar; to agree in amount, position, etc.; to be in harmony or agreement." (Oxford Concise Dictionary, 9th edition, 1995). As such, "reciprocal" is an appropriate word to use in describing our practice under Rule 16–773, at least it was, until this Court's decision in *Attorney Griev. Comm'n v. Weiss,* 389 Md. 531, 546, 886 A.2d 606, 614–15 (2005). The purpose of Rule 16–773 is to ensure that two jurisdictions with the same interest in regulating the legal profession and, in the process and necessarily, protecting the public, ordinarily will impose the same (corresponding, equivalent) discipline upon a violating attorney for the same misconduct. One explanation for the use of the word "corresponding" is that there are some instances in which a particular form of sanction which exists in one jurisdiction has no exact equivalent in another jurisdiction; therefore, the reciprocating jurisdiction must replicate the sanction as closely as possible within the framework which exists in its state. *See, e.g., Attorney Griev. Comm'n v. Ruffin,* 369 Md. 238, 798 A.2d 1139 (2002). (concluding that, because the original sanction ordered in Arizona, a seven month suspension, permitted reinstatement only by order of the court, it thus was most like an indefinite suspension in Maryland, the Court ordered an indefinite suspension).

## A.

Rule 16–773 addresses reciprocal discipline and inactive status. Subsection (e) of that Rule requires that, if exception-

al circumstances are shown by clear and convincing evidence, reciprocal discipline *shall not* be imposed (ordered).[5] To be sure, the Rule does not state explicitly that reciprocal discipline must be ordered unless exceptional circumstances are proven. Nevertheless, the converse necessarily implies that reciprocal discipline ordinarily may not, or should not, be avoided when there are *no* "exceptional" circumstances shown by either Bar Counsel or the respondent.

Our analysis in a reciprocal discipline case has its foundation in two co-existing duties—to protect the public, an underlying purpose of our sanctioning scheme, and to analyze the facts of each case—and several policy goals—to ensure consistency of sanction and to demonstrate comity towards our sister jurisdictions.

First, this Court is required to determine the propriety of a sanction issued by another jurisdiction by looking to the facts and circumstances particular to each case. *Attorney Griev.*

---

5. The majority observes:

   "Interestingly, the rule gives Bar Counsel the discretion to file a petition after it learns of an attorney's misconduct in another state as evidenced by the use of the permissive language "may file." It is argued, however, that—upon filing of the petition—this Court lacks any discretion in regards to the sanction being imposed under Rule 16–773(e), even though Bar Counsel has discretion not to file a petition in the first instance."

   *Attorney Griev. Comm'n v. Whitehead*, 390 Md. 663, 668 n. 8, 890 A.2d 751, 754 n. 8 (2005). I am not impressed. First, it is not at all unheard of that the prosecuting authority will be given broader discretion to initiate proceedings than the sanctioning authority is given to sanction. *See e.g.* Maryland Code (2002) § 14–101 of the Criminal Law Article, subsection (f) of which requires the state, if it intends to prosecute the defendant as a subsequent offender under the section, to comply with the applicable Maryland Rules. Maryland Rule 4–245(b) prescribes the notice required when additional penalties are permitted, but are not mandated. The prosecutor may, but need not, give the notice, but once given, if the pre-requite convictions are proven, the court *must* impose the additional penalty. *See e.g. State v. Green*, 367 Md. 61, 785 A.2d 1275 (2001); *Jones v. State*, 336 Md. 255, 647 A.2d 1204 (1994); *State v. Montgomery*, 334 Md. 20, 637 A.2d 1193 (1994).

   Second, in any event, the argument is not that the Court has no discretion in regards to the sanction in a reciprocal discipline case, it is that it has limited discretion, in accordance with a Rule that it knowingly, intentionally, and voluntarily promulgated.

*Comm'n v. Sparrow,* 314 Md. 421, 426, 550 A.2d 1150, 1152 (1988); *Attorney Griev. Comm'n v. Cafferty,* 376 Md. 700, 727, 831 A.2d 1042, 1058 (2003); *Attorney Griev. Comm'n v. Ruffin,* 369 Md. 238, 253, 798 A.2d 1139, 1148 (2002); *Attorney Griev. Comm'n v. Dechowitz,* 358 Md. 184, 192–3, 747 A.2d 657, 661 (2000); *Attorney Griev. Comm'n v. Scroggs,* 387 Md. 238, 254, 874 A.2d 985, 995 (2005); *Attorney Griev. Comm'n v. McCoy,* 369 Md. 226, 236, 798 A.2d 1132, 1138 (2002); *Attorney Griev. Comm'n v. Gittens,* 346 Md. 316, 326, 697 A.2d 83, 88 (1997); *Attorney Griev. Comm'n v. Willcher,* 340 Md. 217, 222, 665 A.2d 1059, 1061 (1995); *Attorney Griev. Comm'n v. Parsons,* 310 Md. 132, 142, 527 A.2d 325, 330 (1987); *Attorney Griev. Comm'n v. Saul,* 337 Md. 258, 267, 653 A.2d 430, 434 (1995); *Attorney Griev. Comm'n v. Sabghir,* 350 Md. 67, 83–4, 710 A.2d 926, 934 (1998); *Attorney Griev. Comm'n v. Richardson,* 350 Md. 354, 371, 712 A.2d 525, 533 (1998); *Attorney Griev. Comm'n v. Roberson,* 373 Md. 328, 355–6, 818 A.2d 1059, 1076 (2003). Case law demonstrates that there are several important considerations which affect our decision to impose reciprocal discipline: the location of the attorney's practice, where the misconduct actually occurred, and the seriousness with which the other jurisdiction treats the misconduct.[6] *See Attorney Griev. Comm'n v. Scroggs,* 387 Md. 238, 874 A.2d 985 (2005); *Attorney Griev. Comm'n v. Steinberg,* 385 Md. 696, 870 A.2d 603 (2005); *Attorney Griev. Comm'n v. Ayres–Fountain,* 379 Md. 44, 838 A.2d 1238 (2003); *Attorney Griev. Comm'n v. Roberson,* 373 Md. 328, 818 A.2d 1059 (2003); *Attorney Griev. Comm'n v. Ruffin,* 369 Md. 238,

---

**6.** Critical to attorney discipline, and essential to according deference to another jurisdiction's sanction decision on a reciprocal basis, is the policy of protecting the public. That purpose of the attorney discipline process is well established. *Attorney Griev. Comm'n v. Scroggs,* 387 Md. 238, 254, 874 A.2d 985, 995 (2005); *Attorney Griev. Comm'n v. Ayres–Fountain,* 379 Md. 44, 58, 838 A.2d 1238, 1246 (2003); *Attorney Griev. Comm'n v. Cafferty,* 376 Md. 700, 727–8, 831 A.2d 1042, 1059 (2003); *Attorney Griev. Comm'n v. Roberson,* 373 Md. 328, 356, 818 A.2d 1059, 1076 (2003); *Attorney Griev. Comm'n v. McCoy,* 369 Md. 226, 237, 798 A.2d 1132, 1138 (2002); *Attorney Griev. Comm'n v. Sperling,* 380 Md. 180, 191, 844 A.2d 397, 404 (2004); *Attorney Griev. Comm'n v. Myers,* 333 Md. 440, 447, 635 A.2d 1315, 1318 (1994).

798 A.2d 1139 (2002); *Attorney Griev. Comm'n v. Gittens,* 346 Md. 316, 697 A.2d 83 (1997). Cf. *Attorney Griev. Comm'n v. Dechowitz,* 358 Md. 184, 747 A.2d 657 (2000). *See also Attorney Griev. Comm'n v. Weiss,* 389 Md. at 558–59, 886 A.2d at 622 (Bell, C.J. dissenting). Thus, when an attorney primarily practices in another jurisdiction sharing our general policy goals, commits misconduct in that jurisdiction, and is disciplined by that jurisdiction, which also has taken the matter seriously, we are prone to, and generally will, impose reciprocal discipline. *See Attorney Griev. Comm'n v. Scroggs,* 387 Md. 238, 874 A.2d 985 (2005); *Attorney Griev. Comm'n v. Steinberg,* 385 Md. 696, 870 A.2d 603 (2005); *Attorney Griev. Comm'n v. Ayres–Fountain,* 379 Md. 44, 838 A.2d 1238 (2003); *Attorney Griev. Comm'n v. Roberson,* 373 Md. 328, 818 A.2d 1059 (2003); *Attorney Griev. Comm'n v. Ruffin,* 369 Md. 238, 798 A.2d 1139 (2002); *Attorney Griev. Comm'n v. Gittens,* 346 Md. 316, 697 A.2d 83 (1997). Cf. *Attorney Griev. Comm'n v. Dechowitz,* 358 Md. 184, 747 A.2d 657 (2000). *See also Attorney Griev. Comm'n v. Weiss,* 389 Md. at 558–59, 886 A.2d at 622 (Bell, C.J. dissenting); *Sabghir,* 350 Md. at 84, 710 A.2d at 934; *Richardson,* 350 Md. at 371, 712 A.2d at 533; *McCoy,* 369 Md. at 236, 798 A.2d at 1138; *Cafferty,* 376 Md. at 727, 831 A.2d at 1058 (stating that when a sister state's purpose in disciplining attorneys is the same as Maryland's, we will defer). Conversely, the presence of exceptional circumstances necessitates a non-reciprocal sanction.[7]

---

7. The majority argues that our duty to analyze each case would be rendered meaningless were we generally required to impose reciprocal discipline. Yet, it is precisely this duty which would permit this Court to determine the existence of extenuating circumstances, many of which concern constitutional and fairness issues, and which ensures that the process is a considered one, and is not simply automatic.

The majority also contends that were Rule 16–773(e) generally to require reciprocal discipline, Rule 16–773(f) would be rendered meaningless. *Whitehead,* 390 Md. at 671, 890 A.2d at 756. This is not so. Subsection (f) provides that, after the petition and answer have been filed, several things may happen: the Court can immediately impose corresponding discipline, the Court can designate a judge to hear the matter in accordance with Rule 16–757, or the Court may enter any other "appropriate order." The purpose of this subsection is to give the

The majority's essential approach is based on its belief that, although an attorney primarily practices in, and is disciplined by, a jurisdiction which shares this Court's primary disciplinary purpose, such facts are outweighed by our desire for internal consistency of sanction—by our insistence that the sanctions imposed pursuant to petitions filed in Maryland in the first instance and those imposed pursuant to reciprocal process are the same. *See Parsons,* 310 Md. at 142, 527 A.2d at 330; *Sparrow,* 314 Md. at 426, 550 A.2d at 1152; *Willcher,* 340 Md. at 222, 665 A.2d at 1061; *McCoy,* 369 md. at 237, 798 A.2d at 1138; *Ruffin,* 369 Md. at 253, 798 A.2d at 1148; *Cafferty,* 376 Md. at 727, 831 A.2d at 1058; *Ayres–Fountain,* 379 Md. at 57, 838 A.2d at 1246; *Scroggs,* 387 Md. at 254, 874 A.2d at 995. Our cases have demonstrated that, when all other facts and considerations indicate that reciprocity is appropriate, internal consistency, while desirable, as a theoretical matter, is not an end in and of itself and, thus, should not alter the outcome. *Ayres–Fountain,* 379 Md. 44, 56–58 838 A.2d 1238, 1245–1247 (2003) (ordering reciprocal discipline of indefinite suspension though, ordinarily, such misconduct would warrant disbarment in this state); *Saul,* 337 Md. 258, 653 A.2d 430 (1995) (reciprocating although sanction was not consistent with Maryland practice, due to mitigating circumstances considered by the original court); *Sparrow,* 314 Md. 421, 550 A.2d 1150 (1988) (reciprocating, although sanction was not consistent with Maryland practice, due to mitigating circumstances presented to, and considered by, the original court). *See also Gittens,* 346 Md. 316, 697 A.2d 83 (1997); *Richardson,* 350 Md. 354, 712 A.2d 525 (1998) (issue of consistency not material to the decision to reciprocate); *McCoy,* 369 Md. 226, 798 A.2d 1132 (2002) (same); *Ruffin,* 369 Md. 238, 798 A.2d 1139 (2002) (same).

---

Court a choice as to how to proceed. Whether reciprocal discipline is required by Rule 16–773(e) in the majority of circumstances, or not, does not change the meaning of subsection (f). That an order under Rule 16–773(e) must be "appropriate" further ensures that subsections (f) and (e) are in harmony.

The majority cites three cases in which we refused to impose reciprocal sanctions. In *Weiss*, the most recent case, I dissented for the same reasons that I am dissenting in this case. In that dissent, I addressed both *Dechowitz*, 358 Md. 184, 747 A.2d 657 (2000), and *Parsons*, 310 Md. 132, 527 A.2d 325 (1987). As I said, only one of the cases, *Dechowitz*, may actually support the majority. *Weiss*, 389 Md. at 568–69, 886 A.2d at 628 (Bell, C.J. dissenting). In that case, we did impose a more severe sanction in a reciprocal discipline case, disbarment, rather than a period of suspension. *Dechowitz*, 358 Md. at 193, 747 A.2d at 661. Thus, it is an exception to Rule 16–773, perhaps falling under Rule 16–773(e)(4). It is significant, however, that the attorney in that case was still on probation when this Court considered the disciplinary petition. *Id.* at 191, 747 A.2d at 661.

*Parsons* is an unusual case. There, following a precedent set five months earlier in a non-reciprocal attorney discipline case with facts identical to those of *Parsons*, we suspended Parsons for ninety days, rather than six months, which suspension was not to run concurrently with the suspension imposed by the District of Columbia Court of Appeals. *Id.* 310 Md. at 143, 527 A.2d at 330. It is significant that the District's suspension had already ended; therefore, it is likely that we would have deferred, by running our suspension concurrently, had that opportunity been available. Neither of these cases supports the majority's claim that internal consistency overrides the other policy concerns, or controls, our Rule 16–773 analysis.

In fact, the majority's approach to reciprocal discipline—a haphazard analysis whereby the Court may impose whatever discipline it sees fit, without regard to that issued by our sister states—compromises the very purpose reciprocal discipline professes to serve. By refusing to maintain and adhere to a standard by which reciprocal discipline is imposed, a Maryland attorney being disciplined under Rule 16–773 can not anticipate what kind of sanction he or she will receive, and on what basis. This does not promote consistency amongst the reciprocal States and cases; rather, it ensures that there will be

significant inconsistency. Indeed, the majority's approach encourages inconsistency among the reciprocal states. The majority may believe that it is, and, it in fact may be, creating internal consistency, that is, making the sanction imposed in Maryland reciprocal and non-reciprocal cases more consistent. But, because, at the same time it fosters and even exacerbates the inconsistency, in reciprocal discipline cases, between the sanctions imposed by this Court and the reciprocal states, what, I ask, is the purpose, then, of Rule 16–773?

The majority's single-minded focus upon internal consistency, thus, also has a secondary consequence, that of diminishing the importance of another of our policy goals—comity. The majority views comity as an excuse to override all other concerns—namely, those of consistency and protection of the public. *Attorney Griev. Comm'n v. Whitehead,* 390 Md. at 677–83, 890 A.2d at 759–63 (2005). Certainly, this is not the purpose; in fact, comity and consistency must be balanced, and our duty to protect the public must always be paramount. The majority's approach would have us relegate this important goal to the outskirts of our analysis, drawing upon it only when convenient, or when we have already come to a conclusion based on what we perceive to be more important concerns. In fact, comity is *the* underlying, perhaps the only, purpose for Rule 16–773. Consequently, to allow internal consistency to override the Rule itself, again, makes our reciprocal discipline framework utterly and totally superfluous and meaningless.

## B.

The majority is also imposing a lesser sanction because it believes that Rule 16–773(e)(4) is implicated. This is not the case. The purpose of Rule 16–773(e)(4) is to provide an escape mechanism for those meritorious cases in which a sanction is unwarranted or is unduly harsh; by providing for *exceptional* circumstances, it ensures that when "the conduct established does not constitute misconduct in this State or it warrants *substantially different* discipline in this State," (emphasis added) reciprocal sanctions will not be imposed. Exceptional

circumstances are those which are "unusual; not typical." (Oxford Concise Dictionary, 9th Edition, 1995) *Substantially* different discipline is that which is "of real importance, value, or validity; of large size or amount." (Id.). The purpose of such extreme language is to ensure that Rule 16–773(e)(4) remains a rarely-used exception, one which applies only when the discipline typically imposed in this state for the conduct at issue is drastically different than that imposed by the original jurisdiction. It is not an excuse for the Court to impose whatever discipline it sees fit, whenever it is dissatisfied with the sanction issued by the original jurisdiction. The Court's only burden under Rule 16–773(e) is to assess respondent's and Bar Counsel's arguments and to determine whether either side has proven the existence of an exception by clear and convincing evidence. It is the respondent's burden to prove that a lesser sanction, or no sanction, should be imposed. *See Sabghir,* 350 Md. at 84, 710 A.2d at 934; *Richardson,* 350 Md. at 371, 712 A.2d at 533; *McCoy,* 369 Md. at 236–37, 798 A.2d at 1138; *Roberson,* 373 Md. at 356, 818 A.2d at 1076; *Cafferty,* 376 Md. at 727, 831 A.2d at 1058. To that end, the Court must analyze Maryland initiated cases in which attorneys have been sanctioned for misconduct identical to that committed by the reciprocal respondent. It should not, however, characterize every discrepancy in sanction as an exceptional circumstance prohibiting reciprocal discipline. This is nothing short of a deliberate dilution and distortion of the meaning of Rule 16–773(e).

Judge RAKER and Judge WILNER join in the views expressed herein.